UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBIN DEAN,

    Plaintiff,

      v.

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
LOCAL 476

    Defendant.

Civil Action No. 04–1466 (CKK)

**MEMORANDUM OPINION**
(September 20, 2007)

Currently pending before the Court is the Motion for Summary Judgment filed by

Defendant, American Federation of Government Employees ("AFGE"), Local 476 (hereinafter

"Defendant" or "the Local").  Plaintiff, Robin Dean, bring claims pursuant to Title VII of the

Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*, alleging that her supervisor's

unwelcome and pervasive sexual advances created a hostile work atmosphere during her tenure

with Defendant, and that she was wrongfully terminated due to gender discrimination.  *See* Am.

Compl. ¶¶ 26-31.  In addition, Plaintiff asserts a claim for defamation under District of Columbia

law based on an e-mail sent by her supervisor, Edward Eitches, President of the Local, to all of

the Local's members.  *See id.* ¶¶ 32-34.  Defendant moves for summary judgment on a number of

grounds, including that (1) that the Local does not meet the statutory definition of an "employer"

subject to suit under Title VII because it had less than fifteen employees at all relevant times and

is not a "single employer" with the AFGE National Union (hereinafter "the National"); and (2)

that Plaintiff fails to proffer factual evidence sufficient to demonstrate that the Local should be

liable for Mr. Eitches' alleged defamation.  Upon searching consideration of the filings currently

before the Court, the attached exhibits, the relevant case law, and the entire record herein, the

Court concludes that Defendant is correct with respect to each of these preliminary arguments.

As a result, the Court grants-in-part Defendant's Motion for Summary Judgment, and does not

reach the merits of either Plaintiff's Title VII claim or her defamation claim.[1]

## I.  BACKGROUND

The Court begins its discussion of the facts by noting that this Court strictly adheres to

the text of Local Civil Rule 56.1 (identical to Local Civil Rule 7(h)).  The local rules for

summary judgment "assist[] the district court to maintain docket control and to decide motions

for summary judgment efficiently and effectively."  *Jackson v. Finnegan, Henderson, Farabow,*

*Garret & Dunner*, 101 F.3d 145, 150 (D.C. Cir. 1996).  "Requiring strict compliance with the

local rule is justified both by the nature of summary judgment and by the rule's purposes. . . . The

procedure contemplated by the rule thus isolates the facts that the parties assert are material,

distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record."  *Id.*

(quoting *Gardels v. CIA*, 637 F.2d 770, 773 (D.C. Cir. 1980)).  "[A] district court should not be

obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to

make [its] own analysis and determination of what may, or may not, be a genuine issue of

---

[1] In addition to its arguments on the merits of Plaintiff's Title VII and defamation claims, Defendant's Motion for Summary Judgment includes arguments based on theories proffered by Plaintiff in response to Defendant's previous motion to dismiss, including: (1) that the Local did not act as an agent of the National in its dealings with Plaintiff; and (2) that the Local is not subject to suit under Title VII as a "labor organization."  *See generally* Def.'s Mem. of P & A in Support of Def.'s Mot. for Summ. J. (hereinafter "Def.'s Mot.").  These arguments appear to be moot, however, because Plaintiff states in her Opposition that she is not pursuing either of them, and Defendant does not discuss them in its Reply.  *See* Pl.'s Mem. of P & A in Opp'n to Def.'s Mot. for Summ. J. (hereinafter "Pl.'s Opp'n") at 3-4 n.1.

material fact." *Id.* (quoting *Twist v. Meese*, 854 F.2d 1421, 1425 (D.C. Cir. 1988)).

The Court further notes that its October 13, 2005 Scheduling and Procedures Order advised the parties of the Court's strict adherence to the dictates of Local Civil Rules 7(h) and 56.1. *Dean v. AFGE*, Civil Action No. 04-1466, Order (D.D.C. Oct. 13, 2005) (citing *Burke v. Gould*, 286 F.3d 513, 519 (D.C. Cir. 2002)); *see also Dean v. AFGE*, Civil Action No. 04-1466, Minute Order (July 10, 2006). In addition, the Court's Scheduling and Procedures Order advised the parties that, pursuant to Local Civil Rules 7(h) and 56.1, each party submitting a motion for summary judgment is required to attach a statement of material facts as to which that party contends there is no genuine issue, with specific citations to those portions of the record upon which the party relies in fashioning the statement. *Dean v. AFGE*, Civil Action No. 04-1466, Order (D.D.C. Oct. 13, 2005). The party opposing such a motion must, in turn, respond to each paragraph of the moving party's statement of material facts "with a correspondingly numbered paragraph, indicating whether that paragraph is admitted or denied," and including any information relevant to its response. *Id.* Furthermore, "[i]f the responding party has additional facts that are not addressed in the corresponding paragraphs, the responding party should include these at the end of its responsive statement . . .[a]t all points, parties must furnish precise citations to the portions of the record on which they rely." *Id.*

Plaintiff has met her obligation to respond to each paragraph of Defendant's Statement of Material Undisputed Facts (hereinafter "Def.'s Stmt.") with a correspondingly numbered paragraph in her Statement of Material Facts in Dispute (hereinafter "Pl.'s Stmt."), and has included, at the end of that Statement, a section entitled "Additional Facts That Are In Dispute Thereby Necessitating The Denial Of Defendant's Motion." *See generally* Pl.'s Stmt. However,

as Defendant points out in its Reply and its accompanying Response to Plaintiff's Statement of

Material Facts in Dispute (hereinafter "Def.'s Resp. Stmt."), Plaintiff altogether fails to provide

record evidence to support a number of the purported factual assertions included in her

"Additional Facts" section.  *See* Def.'s Reply at 2-5; Def.'s Resp. Stmt. ¶ 1 (citing Pl.'s Stmt. ¶¶

10, 11, 16, 18, 27-28, 31, 35, 38-40, 42-43, 45, 47-48, 50, 54, 56-58, 61-68, 70, 72-78, 80-81, 83-

86, 94, 97-100, 103, 105, and 113-19).  To the extent that Plaintiff does not support her factual

assertions with record evidence, the Court can neither credit them, nor conclude that they

controvert Defendant's factual assertions.

In addition, as Defendant also notes in its Reply and Response Statement, Plaintiff

responds to a number of Defendant's factual assertions by stating that they are "neither disputed

nor admitted, as Plaintiff does not have sufficient information to dispute or admit this

allegation."  *See* Def.'s Reply at 5, Def.'s Resp. Stmt. ¶ 2 (citing Pl.'s Stmt. ¶¶ 5, 14, 44, 46, 51-

53, 59, 60, 69, 71, 79, 72, 88-93, 95-96, 101-02, 104, 106, 108, and 111).  However, this case has

moved beyond the motion to dismiss stage–indeed, Plaintiff was afforded ample time for

discovery in this matter, including an extension of sixty days at Plaintiff's request.  *See Dean v.*

*AFGE*, Civil Action No. 04-1466, Minute Order (D.D.C. Mar. 3, 2006).  At this stage, Plaintiff

cannot controvert Defendant's factual assertions by simply refusing to admit them.  Pursuant to

Local Civil Rule 56.1, in resolving the present summary judgment motion, this Court "assumes

that facts identified by the moving party in the statement of material facts are admitted, unless

such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

LCvR 56.1; 7(h).  Thus, to the extent that Plaintiff fails to adduce record evidence to controvert

Defendant's factual assertions, the Court considers those assertions admitted.

The Court sets forth below the facts that it finds are undisputed, as well as those facts that are supported by record evidence and uncontroverted by the opposing party.  Because the Court does not reach the merits of Plaintiff's Title VII and defamation claims herein, the Court sets forth only such facts as are relevant to Defendant's preliminary arguments for summary judgment.

A.    *Background Facts*

Plaintiff, Robin Dean, worked as a secretary for Defendant AFGE Local Union 476 from September 21, 2002 to June 23, 2003.  Def.'s Stmt. ¶ 1; Pl.'s Stmt. ¶ 1.  The Local is an unincorporated association and a local labor organization, which represents only employees of the United States Department of Housing and Urban Development ("HUD").  Def.'s Stmt. ¶ 2; Pl.'s Stmt. ¶ 2.  Edward Eitches is a senior trial attorney in the General Counsel's Office at HUD, and has been the President of the Local since 1999.  Def.'s Stmt. ¶ 3; Pl.'s Stmt. ¶ 3.  Mr. Eitches hired Plaintiff and acted as her supervisor during her tenure with the Local.  Def.'s Stmt. ¶ 4; Pl.'s Stmt. ¶ 4.  Plaintiff was an at-will employee with no written contract or position description. Def.'s Stmt. ¶¶ 6-7; Pl.'s Stmt. ¶¶ 6-7.  Plaintiff's duties at the Local included general secretarial and receptionist work.  Def.'s Stmt. ¶¶ 6, 8-9; Pl.'s Stmt. ¶¶ 6, 8-9.

Plaintiff's Amended Complaint alleges that during her employment with the Local, she "was subjected to unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature from" Mr. Eitches.  Am. Compl. ¶ 7.  As Defendant points out, Plaintiff does not proffer record evidence in support of these allegations, *see* Def.'s Reply at 17-18; however, this failing is ultimately irrelevant to the instant motion because the Court does not reach the merits of Plaintiff's Title VII claims.  On June 23, 2005, an incident occurred

between Plaintiff and Mr. Eitches, after which Plaintiff called the Federal Protective Services and had Mr. Eitches arrested and escorted out of the building.  Def.'s Stmt. ¶ 12; Pl.'s Stmt. ¶12. Plaintiff subsequently charged Mr. Eitches with assault, but the United States Attorney refused to press charges.  Def.'s Stmt. ¶ 13; Pl.'s Stmt. ¶ 13.  The Executive Board of the Local voted to terminate Plaintiff's employment on June 23, 2003, and Mr. Eitches informed Plaintiff of her termination by way of phone message on the evening of June 23, 2003.  Def.'s Stmt. ¶¶ 14-15; Pl.'s Stmt. ¶¶ 14-15.

B.       *Facts Relating to Plaintiff's Defamation Claim*

On September 14, 2005–more than two years after Plaintiff's employment with the Local was terminated–Mr. Eitches sent an e-mail to Jaminta Fleming, Secretary of the Local, which he copied to the entire Local membership.  Def.'s Stmt. ¶¶ 107-08; Pl.'s Stmt. ¶ 107.  Mr. Eitches sent his e-mail in response to an e-mail sent the previous day by Dee Ann Walker, a Local member who opposed Mr. Eitches' re-election as President in the upcoming union election . Def.'s Stmt. ¶¶ 109-10; Pl.'s Stmt. ¶¶ 109-10.  Ms. Walker's e-mail accused Mr. Eitches of, *inter alia*, criminal assault, sexual harassment, drunken behavior, child molestation, unlawful appropriation of union funds, corruption, dictatorial behavior, and betrayal.  Def.'s Stmt. ¶¶ 110, 112 (quoting Dean Dep. at 94:4-14, 97:17-98:2); Pl.'s Stmt. ¶¶ 110, 112; *see also* 9/13/05 e-mail from D. Walker (Ex. C to Def.'s Mot. for Summ. J., Ex. 8 (9/26/06 Decl. of E. Eitches)).  Ms. Walker's e-mail also included a verbatim copy of Plaintiff's Complaint in this case.  Def.'s Stmt. ¶ 112; Pl.'s Stmt. ¶ 112; *see also* 9/13/05 e-mail from D. Walker.

Mr. Eitches' response e-mail stated that Ms. Walker's e-mail "concerns an EEO Complaint that [Plaintiff] filed against AFGE Local 476 . . . ."  *See* 9/14/05 e-mail from E.

6

Eitches (Ex. D to 9/26/06 Eitches Decl.).  Mr. Eitches' e-mail continues:

> [Plaintiff] was employed by the union from September 21, 2002.  She was fired
> for cause (AWOL, unsatisfactory work performance, stealing, fraud,
> insubordination) on June 2, 2003.  One executive board member asked that
> [Plaintiff] be given a last chance, which we did.  She then proceeded . . . to have
> me illegally arrested for simple assault when she thrust her hand at my eye, and I
> moved it away.  The US Attorney refused to even bring charges.  After that
> incident, the executive board voted unanimously to have her terminated.

*Id.*  Plaintiff asserts that Mr. Eitches sent his e-mail "to all local members, used his union account

e-mail account to send the e-mail, and set the e-mail during normal work hours."  Pl.'s Stmt. ¶

133.  However, Plaintiff offers no factual support for her assertion that Mr. Eitches used a union

e-mail account to send his e-mail, and her assertion is directly controverted by the November 17,

2006 Declaration of Russell Varnado, First Vice-President and Chief Steward of the Local, in

which Mr. Varnado states, "[t]here are no union e-mail accounts at Local 476.  All union

stewards and officers, including President Eitches, use a government e-mail account provided by

HUD for all e-mail communications."  11/17/06 Varnado Decl. (Def.'s Reply, Ex. 1) ¶ 6.[2]  The

Court therefore concludes that Mr. Eitches did not send his September 14, 2005 e-mail from a

Local e-mail account.

---

[2] Upon reviewing Defendant's filings in connection with its Motion for Summary
Judgment, the Court noted that three of the Declarations submitted by Defendant were
unsigned–a purported Declaration of William G. Christie (Def.'s Mot. for Summ. J., Ex. 9); the
September 21, 2006 Declaration of Dwight R. Bowman (Def.'s Mot. for Summ. J., Ex. 10); and
the November 17, 2006 Declaration of Russell Varnado (Def.'s Reply, Ex. 1).  The Court
contacted counsel for both parties via telephone conference call and informed counsel for
Defendant of the missing signatures.  Defendant's counsel corrected the error with respect to two
of the Declarations–the Bowman Declaration (Def.'s Mot. for Summ. J., Ex. 10) and the Varnado
Declaration (Def.'s Reply, Ex. 1)–and filed signed copies of the Declarations, dated
contemporaneously with Defendant's original filings, on the docket.  However, Defendant's
counsel was unable to locate a contemporaneously signed copy of the purported Christie
declaration.

C.      *Facts Relating to Plaintiff's Title VII Claim*

        1.      *The Local's Personnel on Payroll, Officers, and Stewards*

The Local has never had more than two full-time staff members on its payroll at a given

time, and usually has only had one.  Def.'s Stmt. ¶ 27.[3]  At present, the Local has no staff on its

payroll.  *Id.*[4]  Plaintiff worked for the Local during 2002 and 2003.  *Id.* ¶ 1; Pl.'s Stmt. ¶ 1.  The

Local had a total of five individuals on its payroll at various points in time during 2002: Delores

Walker, who was terminated after the first quarter; Ms. Walker's replacement, Valerie Johnson,

who left in early September; and Plaintiff, who replaced Ms. Johnson; as well as Nique Bullock

and Iris Cooper, two full-time HUD employees and union stewards who were paid by the Local

to perform union work on their days off, as a second job.  Def.'s Stmt. ¶¶ 29, 56, 62; Eitches

Decl. ¶ 5; *see also* Eitches Dep. at 27:11-16; Second Christie Decl. ¶ 8.[5]  The Local withheld

_____

[3] Defendant's Statement asserts that "[t]he Local has never had more than two full-time paid employees at one time, and usually has only had one; it currently has no employees."  Def.'s Stmt. ¶ 27.  This is not a factual assertion, but rather a legal conclusion as to one of the main issues underlying Defendant's Motion for Summary Judgment–whether the Local has fifteen or more employees.  The Court therefore assumes that Defendant uses the term "employee" in this context to describe individuals on the Local's payroll, and shall refer to such individuals in that manner, rather than as "employees."

[4] Plaintiff disputes Defendant's factual assertions but does not provide specific record citations to demonstrate the existence of a genuine question of material fact.  *See* Pl.'s Stmt. ¶ 27.  Instead, Plaintiff cites the Court generally to the portion of her "Additional Facts" section headed "Local 476 Employees," wherein only some of her purported factual assertions are supported by record evidence.  *See* Pl.'s Stmt. ¶¶ 120-31.  The Court discusses Plaintiff's factual assertions regarding "Local 476 Employees" as they relate to Defendant's assertions.

[5] As discussed above, the Declaration of William G. Christie submitted in support of Defendant's Motion for Summary was not signed contemporaneous with the filing of that Motion.  On September 14, 2007, Defendant filed a Motion for Leave to File a newly executed declaration by Mr. Christie, signed on September 12, 2007 (hereinafter the "Second Christie Declaration").  Certain paragraphs of the Second Christie Declaration are identical to those included in the original, unsigned Christie declaration (¶¶ 1-9, 11, 13, 15-16, and18); however,

income and Social Security taxes and filed the appropriate tax paperwork for Plaintiff, Johnson,

Bullock, and Cooper during 2002.  Def.'s Stmt. ¶¶ 30, 56 (citing Eitches Dep. at 28:11-29:29);

Pl.'s Stmt. ¶ 30.

During 2003, the Local's cancelled check records indicate that the following individuals

were on the Local's payroll: Plaintiff, Jacqueline Mathis, Naomi Taylor, and Sharon Thorne.

Def.'s Stmt. ¶ 64; Second Christie Decl. ¶ 9.  In addition, during his deposition in this matter,

Mr. Eitches testified that the Local never had more than two full-time paid employees at one

time, and he reiterates this assertion in his September 26, 2006 Declaration.   *See* Eitches Dep. at

148:1-7; 152:16-22; Eitches Decl. ¶ 4.[6]  The Court therefore concludes that the Local did not

have more than fifteen individuals on its payroll in either 2002 or 2003.  The Court would reach

the same conclusion, even if it were to exclude the statements regarding the individuals on the

Local's payroll during 2002 and 2003 included in the Second Christie Declaration, because

Plaintiff proffers no evidence to controvert Mr. Eitches Deposition and Declaration testimony

---

Mr. Christie has made handwritten alterations to other paragraphs of the Second Christie
Declaration (¶¶ 10, 12, 14, 17, and 19).  With respect to the paragraphs of the Second Christie
Declaration that are identical to the original declaration, Plaintiff's counsel had the opportunity to
respond to the assertions made therein, and to proffer controverting evidence, in opposing
Defendant's Motion for Summary Judgment.  However, to the extent that the Second Christie
Declaration includes *post hoc* assertions, which are not contemporaneous with Defendant's
Motion for Summary Judgment, Plaintiff's counsel has not had the opportunity to respond to
those assertions, nor has Defendant been able to explain how they support its position.  As a
result, the Court shall grant-in-part Defendant's Motion for Leave to File, and shall admit and
consider paragraphs 1-9, 11, 13, 15-16, and18 of the Second Christie Declaration.  The Court
shall deny-in-part Defendant's Motion for Leave to File with respect to paragraphs 10, 12, 14, 17,
and 19 of the Second Christie Declaration, and shall therefore not consider the assertions made
therein.

[6] Again, the Court assumes that by "employees," Defendant refers to individuals on its
payroll.

that the Local never had more than two individuals on its payroll at any point in time.

The Local's Constitution and Bylaws provides for an elected Executive Board consisting of a President, First Vice President, Second Vice President, Treasurer, and Secretary.  *See* Def.'s Mot. for Summ. J., Ex. 3 (AFGE Local 476 Constitution (hereinafter "Local Constitution") at 3; and Bylaws of AFGE Local 476 (hereinafter "Local Bylaws") at 2).  In 2003, the officers of the Local were Mr. Eitches, President; Ron Wallace, Vice President; Yvette Aidara, Secretary; Robert Aberasturi, Treasurer; and EnTien Yu, Sergeant-at-Arms.  Def.'s Stmt. ¶ 36; Pl.'s Stmt. ¶ 36.  In addition, the Local is permitted to designate up to twenty union stewards, who are assigned to perform union representation part-time.  Def.'s Stmt. ¶¶ 44, 46.

Mr. Eitches works full-time at HUD as a senior trial attorney, and his salary is paid by HUD.  Def.'s Stmt. ¶ 31; Eitches Dep. at 4:17-22; 7:6-9.  Nevertheless, Mr. Eitches spends between 75 and 90% of his duty hours on "official time" in his capacity as President of the Local.  Def.'s Stmt. ¶ 31; Eitches Dep. at 5:14-6:2.  "Official time" refers to duty hours paid by HUD during which a HUD employee is authorized to perform representational duties on behalf of union members.  Def.'s Stmt. ¶ 32; Eitches Dep. at 36:5-14; 38:2-4; Pl.'s Stmt. ¶ 32.  Official time is authorized by law and as a result of the collective bargaining agreement between HUD and Local 476.  *Id.*  Specifically, the Federal Service Labor Relations Act provides for federal agencies to pay official time to federal employees who are union representatives "in any amount the agency and the exclusive representative involved agree to be reasonable, necessary, and in the public interest." 5 U.S.C. § 7131(a), (d); Def.'s Stmt. ¶ 33; Pl.'s Stmt. ¶ 33.  Furthermore, the collective bargaining agreement between HUD and the Local provides for official time for union representatives–including officers and stewards–for handling grievances and other complaints,

attending meetings, and other representational functions.  Def.'s Stmt. ¶ 34 (citing Eitches Decl. ¶ 9); Pl.'s Stmt. ¶ 34.

Although the Local is permitted to designate up to twenty stewards, it is limited to a total of 5.7 full-time equivalent positions ("FTEs") of paid official time for stewards and/or officers. Def.'s Stmt. ¶ 44; Eitches Dep. at 150:1-151:20.  HUD enforces these limits by requiring most stewards to document their hours on a bi-weekly basis.  Def.'s Stmt. ¶ 44 (citing Varnado Dep. at 48:16-49:20).  The Local's stewards may be assigned to perform as little as 5% of their work week on union representation.  Def.'s Stmt. ¶ 46 (citing Eitches Dep. at 35:3-36:14).  In 2003, fourteen stewards were assigned to spend 10% of their work week on union representation, and four were assigned to spend 25% of their work week on union representation.  *Id.* (citing AFGE Local Steward List (as of 11/03) (Eitches Decl., Ex. A)).  Stewards perform general representational functions, including "assisting individual Local members and representing their interests in grievances, meetings, and enforcement of their rights under the collective bargaining agreement."  Def.'s Stmt. ¶ 48 (citing 5/25/06 Dep. of Russell Varnado at 25:12-21; Local Bylaws at Sec. 23).  Significantly, pursuant to 5 U.S.C. § 7131(b), Local stewards and officers are expressly prohibited from performing "[a]ny activities . . . relating to the internal business of a labor organization" while on official time.  5 U.S.C. § 7131(b).  Rather, stewards and officials are restricted to doing representational work while on official time.  *Id.*; Eitches Dep. at 39:3-6.

Plaintiff admits that "[c]ompensation for such official time is paid by HUD to its employees in their capacity as federal employees, as part of their regular paycheck.  HUD issues their paychecks, which are funded from its agency budget, withholds all deductions, and issues their annual W-2 forms."  Def.'s Stmt. ¶ 35 (citing Eitches Decl. ¶ 11); Pl.'s Stmt. ¶ 35.

Nevertheless, Plaintiff disputes Defendant's assertion that "[a]ll stewards are HUD employees,

and are paid by HUD for their part-time union work as 'official time' under the collective

bargaining agreement between HUD and the union."  Def.'s Stmt. ¶ 45 (citing Eitches Dep. at

150:17-18; Dean Dep. at 28:7-10).  Plaintiff does not provide record support for her "dispute,"

but rather generally refers the Court to her "Additional Facts" regarding "Local 476 Employees."

See Pl.'s Stmt. ¶ 35.  Therein, Plaintiff asserts that the

> arrangement Local 476 and HUD have with respect to persons who perform work
> for both by [sic] Local 476 and HUD is unlike a standard union-employer
> relationship.  A person who is a Local 476 official and a HUD employee is paid
> by HUD even though he or she may spend as much as 100% of the work day on
> union matters.

Pl.'s Stmt. ¶ 120.[7]

The record does demonstrate that Local officials may spend up to 100% of their duty

hours on union work, as official time for which they are paid by HUD.  See Def.'s Stmt. ¶ 52

(citing Eitches Dep. at 150:11-151:4); see also AFGE Local 476 Steward List (As of 11/03)

(Eitches Decl., Ex. A) (indicating Eitches, Wallace, and Aberasturi assigned at 75%).  However,

Plaintiff provides no factual support for her suggestion that the official time arrangement

provided for in the collective bargaining agreement between HUD and the Local is unusual.

See Pl.'s Stmt. ¶ 120.  Moreover, this suggestion is contravened by the November 17, 2006

Declaration of Russell Varnado, the Local's current First Vice President, who asserts that

---

[7] In support of a number of her "Additional Facts," Plaintiff cites to deposition testimony
that does not actually support her assertions.  For instance, in paragraph 120 of her Statement
Plaintiff asserts that Local officers are paid by HUD although they may spend up to 100% of
their work time on union matters, but cites to a Portion of Mr. Eitches' deposition discussing the
two individuals who worked part-time for the Local in addition to working full-time for HUD.
Pl.'s Stmt. ¶ 120 (citing Eitches Dep. at 25:3-5).

> "official time" arrangements are virtually universal among federal labor
> organizations, and have been so since at least 1978, when they were recognized as
> an essential element of the Federal Labor-Management Relations Statute, 5 U.S.C.
> § 7131, as being "in the public interest." They have been approved by the Federal
> Labor Relations Authority [sic]  Virtually all of AFGE's over 1000 local
> bargaining units use such arrangements, as do many other public sector unions.

Varnado Dep. ¶ 3.  The Court therefore has no basis on which to conclude that the official time

arrangement between the Local and HUD is out of the ordinary.

In her "Additional Facts," Plaintiff also asserts that "Mr. Eitches testified that he has the

power to hire and fire Local 476's stewards."  Pl.'s Stmt. ¶ 128 (citing Eitches Dep. at 39:7-19).

In fact, Mr. Eitches testified at his deposition that the stewards serve at his discretion, that he is

entitled to reallocate the 5.7 FTEs of official time quarterly, and that he names the stewards by

notifying HUD management.  Eitches Dep. at 39:7-19.  While this testimony may suggest that

Mr. Eitches controls which individuals serve as Local stewards, it in no way demonstrates that he

has any control over the stewards' employment at HUD–the entity from which they receive their

paychecks.  Finally, the Court notes that Plaintiff provides no record support for her assertion

that "[i]f stewards did not work their allotted union hours, the stewards would receive no pay for

those hours."  Pl.'s Stmt. ¶ 131.  Once again, that assertion is directly contravened by Mr.

Varnado's Declaration, wherein he asserts that "if the stewards did not work their allotted union

hours, or were removed from their positions as stewards . . . their official time would also be

removed, and they would return to the duties of their regular federal employment with HUD.

They would lose no pay, status or other benefits whatsoever."  Varnado Dep. ¶ 4.  The Court

therefore does not credit Plaintiff's suggestion that the Local's "stewards receive 10-25% of their

income from the work they perform for the union."  *See* Pl.'s Opp'n at 11.

Plaintiff concludes in her "Additional Facts" section that the Local's officers and stewards are employees rather than "part-time volunteers" because they "are paid by HUD for the hours they work on union business." Pl.'s Stmt. ¶ 130. Because this constitutes a legal conclusion rather than a factual assertion, the Court discusses its merit below. At this point, however, the Court notes simply that Plaintiff does not proffer any evidence to contravene Defendant's evidence that the Local's officers and stewards are paid for their representational union work by HUD as official time. Nor does Plaintiff present any evidence that the Local reimburses HUD for the official time portions of Local officers and stewards' paychecks. Furthermore, the record demonstrates that the Local's officers and stewards generally do not receive salaries or benefits from the Local. The exception to this rule appears to be that the Local reimburses some of Mr. Eitches' travel costs when he attends conferences and conventions on behalf of the Local, *see* Def.'s Stmt. ¶ 40; however, Plaintiff does not contend that this constitutes compensation, and there is no record evidence to suggest that this represents a net gain for Mr. Eitches. Mr. Eitches pays his own union dues, and does not receive a salary or wages, a car or driver, or any contribution to a retirement or pension account from the Local. Def.'s Stmt. ¶¶ 39-41; Eitches Dep. at 7:8-12:9. The rest of the Local's officers pay their own union dues and receive no salaries, compensation, or benefits from the Local. Def.'s Stmt. ¶ 43; Eitches Dep. at 20:1-8; Varnado Dep: at 41:5-42:15. Similarly, the Local's stewards pay their own union dues and do not receive salaries or benefits from the Local. Def.'s Stmt. ¶ 54; Eitches Dep. at 38:13-39:2; Varnado Dep. at 35:2-18; 42:11-15.

2.    *The Relationship Between the Local and the National*

14

The Local is governed by its own Constitution, which proclaims, "[t]his local is a separate, independent organization functioning in conformity with AFGE's National Constitution." Def.'s Stmt. ¶ 70 (citing Local Const. at 1). The Local's Constitution vests the Local President with responsibility for the general supervision of the Local, and President Eitches does not report to anyone at the National. Def.'s Stmt. ¶¶ 72-73; Local Const. at Art. VI, Sec.3; Local Bylaws at Sec. 10; Eitches Dep. at 77:5-11).[8] The Local's Constitution provides that the Local handles its own finances, issues its own checks, maintains its own financial records, files a copy of its annual audit with the National Secretary-Treasurer, and allows the National to inspect the Local's books, records, and financial accounts. Def.'s Stmt. ¶ 74; Local Const. at Art. V.

The Local is self-sufficient and meets its budget needs from the collection of dues and other business activities, without financial reliance on the National. Def.'s Stmt. ¶ 81; Eitches Decl. ¶ 17; Bowman Decl. ¶ 14. In her Opposition (although not in her Statement), Plaintiff asserts–citing to Mr. Eitches' deposition testimony–that "AFGE collects dues from Local 476, pays obligations for Local 476, and disburses funds to Local 476." Pl.'s Opp'n at 15 (citing Eitches Dep. at 64-65). In fact, Mr. Eitches' deposition testimony describes a system whereby dues are electronically subtracted from Local members' paychecks and collected by the Department of Agriculture, which handles HUD's payroll. Eitches Dep. at 63:16-66:15. Thereafter, the National subtracts its share of the dues, and delivers the remaining money to the Local. *Id.* As Mr. Eitches describes it, this system appears to be a pass-through system designed

---

[8] Plaintiff "disputes" each of these assertions, but provides no support for her "dispute" and does not even indicate the grounds on which she "disputes" the assertions. *See* Pl.'s Stmt. ¶¶ 70, 72-73. While Plaintiff generally cites the Court to her "Additional Facts" regarding "Local 476 Employees," that section of Plaintiff's Statement contains no discussion of the relationship between the Local and the National. *See* Pl.'s Stmt. ¶¶ 120-31.

for administrative convenience, which allows the electronic deposit of dues funds into the Local's account. *Id.* at 66:2-14. The Court therefore credits Defendant's assertion that the National has no financial ownership in or control of the Local. *See* Def.'s Stmt. ¶ 81; Eitches Decl. ¶ 17; Bowman Decl. ¶ 14.

In her Opposition, Plaintiff asserts that the Local's "labor relations are controlled by [the National's] constitution." Pl.'s Opp'n at 15. Plaintiff bases this assertion on Mr. Eitches' deposition testimony that the Local "could not operate in violation of the constitution of AFGE," Eitches Dep. at 52:17-21, which certainly does not demonstrate that the National "controls" the Local's labor relations. Moreover, Plaintiff's assertion is directly contradicted by the September 21, 2006 Declaration of Dwight R. Bowman, the National Vice-President for the 14th District of the AFGE, wherein he states that "[n]either any National Officer nor the National Union as a whole has any authority to hire, fire, supervise, or oversee employees of any Local Union, to direct their affairs, or to control the finances of any Local." Bowman Decl. ¶ 12. The Court therefore cannot credit Plaintiff's assertion that the National controls the Local's labor relations. Furthermore, the National did not hire, employ, or terminate Plaintiff, play any role in her employment, or pay her or provide her with employment benefits. Def.'s Stmt. ¶ 78; Eitches Decl. ¶¶ 12, 19-20; Bowman Decl. ¶ 15. Plaintiff did not interact with the National during her employment with the Local and, prior to her deposition in this case, did not know where the National office was located. Def.'s Stmt. ¶¶ 85, 87; Eitches Decl. ¶ 13; Dean Dep. at 21:15-22:6.

Additionally in her Opposition (although not in her Statement), Plaintiff asserts that Mr. Eitches is "a regional vice president and executive board member of AFGE's bargaining council." Pl.'s Opp'n at 15. As support for this statement, Plaintiff cites a portion of Mr.

Eitches' deposition transcript that is entirely unrelated to this assertion.  *See* Eitches Dep. at

54:17-21.  In any event, Mr. Eitches actually testified at his deposition that he is a regional vice

president and serves on the executive board of HUD Council 222, a coalition of unions that

represent HUD employees, which is not connected to the AFGE National.  *See* Eitches Dep. at

72:21-74:11; *see also* Varnado Decl. ¶ 5 ("Although Eitches is an officer of the HUD bargaining

council, he is not an officer of the National Union, which is a separate and distinct entity.").  The

Court therefore credits Defendant's assertion that none of the Local's officers are employees or

officers of the National, Def.'s Stmt. ¶ 79; Eitches Decl. ¶ 15, and concludes that the Local's

Executive Board is distinct from the National.

     D.     *Procedural History*

     Plaintiff filed her initial Complaint in this action on August 27, 2004.  Defendant

subsequently moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure

12(b)(1) on the ground that the Local does not meet the statutory definition of an "employer"

under Title VII because (1) it has fewer than fifteen employees; and (2) it does not qualify as a

"labor organization" under the statute.  In its August 29, 2005 Memorandum Opinion and Order,

the Court denied Defendant's motion to dismiss for lack of subject matter jurisdiction, finding

that whether an organization meets the statutory definition of an "employer" under Title VII is

not jurisdictional, but rather is an element of a claim that must be decided on the merits.  *See*

*Dean v. AFGE*, 402 F. Supp. 2d 107 (D.D.C. Aug. 29, 2005).  Thereafter, on November 14,

2005, Plaintiff filed a motion to amend her complaint to add her defamation claim, which the

Court granted.  Following discovery in this matter, Defendant filed its Motion for Summary

Judgment on September 29, 2006, Plaintiff filed her Opposition on October 31, 2006, and

Defendant filed its Reply on November 20, 2006.

## II.  LEGAL STANDARD

A party is entitled to summary judgment if the pleadings, depositions, and affidavits demonstrate that there is no genuine issue of material fact in dispute and that the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994).  Under the summary judgment standard, Defendant, as the moving party, "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Plaintiff, in response to Defendants' motion, must "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 324, 106 S. Ct. 2548.

Although a court should draw all inferences from the supporting records submitted by the nonmoving party, the mere existence of a factual dispute, by itself, is not sufficient to bar summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To be material, the factual assertion must be capable of affecting the substantive outcome of the litigation; to be genuine, the issue must be supported by sufficient admissible evidence that a reasonable trier-of-fact could find for the nonmoving party.  *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987); *Liberty Lobby*, 477 U.S. at 251-52, (the court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law").  "If the evidence is

merely colorable, or is not sufficiently probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50, (internal citations omitted).  "Mere allegations or denials of the adverse party's pleading are not enough to prevent the issuance of summary judgment." *Williams v. Callaghan*, 938 F. Supp. 46, 49 (D.D.C. 1996).  The adverse party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, while the movant bears the initial responsibility of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact, the burden shifts to the non-movant to "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* at 587 (citing Fed. R. Civ. P. 56(e)) (emphasis in original).

## III.  DISCUSSION

Defendant's Motion for Summary Judgment presents both preliminary arguments regarding Plaintiff's ability to pursue her Title VII and defamation claims against the Local, and substantive arguments regarding the merits of those claims.  In the former category, Defendant argues that (1) the Local is not an "employer" for purposes of Title VII because at all relevant times it employed less than fifteen people, and because it is not a "single employer" with the National; and (2) that Plaintiff fails to proffer factual evidence sufficient to demonstrate that the Local should be liable for Mr. Eitches' alleged defamation.  The Court addresses these preliminary arguments in turn, and concludes that Defendant is correct as to all of them.  As a result, the Court does not reach the merits of Plaintiff's Title VII claim or her defamation claim.

A.  *The Local Had Fewer Than Fifteen Employees At All Relevant Times*

1.  *The Local's Officers And Stewards Are Not Union Employees*

Title VII applies to any employer who "has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 2000e(b). Title VII circularly defines an employee as "an individual employed by an employer." 42 U.S.C. § 2000e(f).[9] The Local's Motion for Summary Judgment argues that the Local is not an employer for purposes of Title VII because it employed less than fifteen people at all relevant points in time–specifically, because it had at most two individuals on its payroll at any point in time, and because its officers and stewards are not "employees" but rather "unpaid volunteers." Def.'s Mot. for Summ. J. at 8-9, 12-14.

In *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202 (1997), the Supreme Court addressed the question of how to determine whether "an employer 'has' an employee on any working day" for purposes of 42 U.S.C. § 2000e(b). *Id.* at 202. The Supreme Court determined that the relevant inquiry is whether "the employer has an employment relationship with the individual on the day in question. This test is generally called the 'payroll method,' since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." *Id.* at 206. Applying the "payroll method" test to the

---

[9] Courts in other jurisdictions have applied these definitions to labor unions when they are sued in their roles as employers. *See Ferroni v. Teamsters, Chauffeurs & Warehousemen, Local No. 222*, 297 F.3d 1146, 1152 (10th Cir. 2002) (union local with four employees was not an employer under Title VII); *Yerndon v. Henry*, 91 F.3d 370, 375 (2d Cir. 1996) (union local was not an employer where it did not have fifteen employees during the relevant period); *Kern v. City of Rochester*, 93 F.3d 38, 46 (2d Cir. 1996) ("In the present case, because [plaintiff] is suing [the local] in its capacity as her employer . . . [plaintiff] must demonstrate that [the local] meets the Title VII definition of an employer."); *Chavero v. Local 241, Div. of Amal. Transit Union*, 787 F.2d 1154, 1155 n.1 (7th Cir. 1986) ("Where, however, a plaintiff attempts to hold the union liable in its employer capacity, it must fall under that definition, *see* 42 U.S.C. § 2000e(b), just as any other employer."); *Renfro v. Office and Prof'l Employers Int'l Union, Local 277*, 545 F.2d 509, 510 (5th Cir. 1977) (union council was not an employer where it employed one individual).

instant case, the Court notes that Plaintiff has proffered no evidence whatsoever to establish that

the Local had fifteen or more individuals on its payroll at any point in either 2002 or 2003.[10]  As

discussed above, in 2002, the Local had a total of five people on its payroll at various points in

time, but at most two at any given point in time.  *See* Def.'s Stmt. ¶¶ 29, 56, 62; Eitches Decl. ¶

5; *see also* Eitches Dep. at 27:11-16; Second Christie Decl. ¶ 8.  In 2003, the Local had a total of

four individuals on its payroll; again, no more than two at any point in time.  *See* Def.'s Stmt. ¶

64; Second Christie Decl. ¶ 9; Eitches Dep. at 148:1-7; 152:16-22; Eitches Decl. ¶ 4.

Based solely on the payroll method, then, the Local is certainly not an employer for

purposes of Title VII.  Plaintiff nevertheless urges the Court to look beyond the payroll method,

arguing that "[u]nder any well-reasoned analysis of the facts presented in this case, Local 476's

officers and stewards should be considered the local's 'employees' because they are paid by

HUD for doing union work under HUD and Local 476's contract."  Pl.'s Opp'n at 13.  Plaintiff

further claims that the "arrangement Local 476 and HUD have with respect to persons who

perform work for both by [sic] Local 476 and HUD is unlike a standard union-employer

relationship . . . [and] unlike any found in any of the reported cases."  Pl.'s Opp'n at 8.  However,

as discussed above, the official time arrangement between HUD and the Local's officers and

stewards is not out of the ordinary at all.  Official time arrangements are specifically provided for

by federal law, have been approved by the Federal Labor Relations Authority, and are used in

virtually all of AFGE's over 1000 local bargaining units.  *See* Varnado Dep. ¶ 3, 5 U.S.C. §

---

[10] The relevant time period is when the alleged discrimination took place, rather than
when the complaint is filed.  *Matthews v. Am. Psych. Soc.*, Civil Action No. 04-261, 2005 WL
555413, at *2 (D.D.C. Mar. 7, 2005) (Kollar-Kotelly, J.) (citing *Walters*, 519 U.S. at 205; *EEOC
v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 623 n.1 (D.C. Cir. 1997); *Komorowski v.
Townline Mini-Mart and Restaurant*, 162 F.3d 962, 966 (7th Cir. 1998)).

7131.  As a result, Plaintiff's attempt to shade the relationship between the Local and its officers

and stewards does not demonstrate that the reported cases considering whether union officers and

stewards are union employees for purposes of Title VII are inapposite.

Plaintiff claims that the "only case that bears any relevance whatsoever to the present case

is *Daggitt v. United Food & Commercial Workers Union*, 245 F.3d 891 (8th Cir. 2001)."  Pl.'s

Opp'n at 10.  In *Daggitt*, the court determined that local union stewards were employees of the

union where they received three forms of monetary compensation: (1) reimbursement for union

dues; (2) "lost time" payments to make up for pay that the stewards' employer docked for time

spent performing union duties; and (3) employer contributions to the stewards' 401(k) plan in an

amount equal to the contribution lost by each steward for attending to union affairs during work

hours.  *See Daggitt*, 245 F.3d at 987.  In addition to providing these monetary benefits, the local

required stewards to fill out W-4 tax forms to receive lost time pay and issued stewards W-2 tax

forms each year reflecting these payments.  *Id.*  Based on the foregoing, the *Daggitt* court

concluded that the "monetary benefits flowing from [the local] to its stewards amounted to

compensation for their services." *Id.*

In contrast to the stewards in *Daggitt*, in the instant case, the Local's officers and

stewards receive no compensation whatsoever from the Local.  The Local's officers and stewards

only receive paychecks from HUD, receive no salary, wages, or other benefits from the Local,

and pay their own union dues.  Def.'s Stmt. ¶¶ 43, 54; Eitches Dep. at 20:1-8, 38:13-39:2;

Varnado Dep: at 35:2-18; 41:5-42:15.[11]  Plaintiff attempts to avoid this distinction by suggesting

---

[11] As noted above, the sole exception to this statement appears to be that Mr. Eitches receives some reimbursement of travel costs when he attends conferences and conventions on behalf of the Local.  *See* Def.'s Stmt. ¶ 40.  However, Plaintiff does not argue that this

that the Local is "mischaracterizing the compensation its stewards receive," and that they

"receive 10-25% of their income from the work they perform for the union." Pl.'s Opp'n at 11.

However, Plaintiff is the one "mischaracterizing" the stewards' compensation. As discussed

above, Plaintiff errs in suggesting that the Local's officers and stewards would not receive their

full salary from HUD if they did not work their allotted official time. Pl.'s Opp'n at 9. Rather,

as Mr. Varnado explains in his Declaration, if the Local's officers and stewards did not work

their allotted union hours, they "would return to the duties of their regular federal employment

with HUD. They would lose no pay, status or other benefits whatsoever." Varnado Dep. ¶ 4.

Despite Plaintiff's unsupported assertions, it is clear from the record that the Local's officers and

stewards are only compensated by HUD, and not by the Local.

　　　Plaintiff also stresses *Daggitt*'s consideration of other "indicia of an employment

relationship" examined by courts in cases considering a labor union's status as an employer for

purposes of Title VII. *See* Pl.'s Opp'n at 10-11. The Court discusses those indicia below, but

notes that *Daggitt* only turned to a discussion of those indicia after concluding that the stewards

in that case received compensation from the local for their services. *See* 245 F.3d at 987-88.

Indeed, *Daggitt* specifically stated:

> "Central to the meaning of [the words employer and employee in the context of
> Title VII] is the idea of compensation in exchange for services: an employer is
> someone who pays, directly or indirectly, wages or a salary or other compensation
> to the person who provides services–that person being the employee."
> Compensation is an "essential condition to the existence of an employer-employee
> relationship." Without compensation, no combination of other factors will suffice

reimbursement constitutes actual compensation to Mr. Eitches, and in *Ferroni*, the Tenth Circuit
found that "isolated reimbursements . . . are insufficient to establish employment relationships
that would justify counting the stewards toward" Title VII's fifteen employee requirement.
 *See* 297 F.3d at 1152.

to establish the relationship.

*Id.* at 987 (quoting *Graves v. Women's Prof'l Rodeo Ass'n*, 907 F.2d 71, 73 (8th Cir. 1990)).

Based on *Daggitt*, it appears that the fact that the Local does not compensate its officers and stewards conclusively demonstrates that the they are not employees for purposes of Title VII. Nevertheless, the Court considers the more general indicia of an employment relationship, which have been considered in Title VII cases by courts in other jurisdictions in determining whether a labor union's executive board members are union employees,[12] as well as by the D.C. Circuit in determining whether a worker is an employee or an independent contractor. Specifically, the D.C. Circuit has instructed that courts should engage in an "analysis of the 'economic realities' of the work relationship," which involves "consideration of all of the circumstances surrounding the work relationship." *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979). Although "no one factor is determinative . . . the extent of the employer's right to control the 'means and manner' of the worker's performance is the most important factor to review . . . ." *Id.*[13]

---

[12] Other than *Daggitt*, only one reported case appears to consider whether union stewards are employees for Title VII purposes. In *Ferroni v. Teamsters, Chauffeurs & Warehousemen Local No. 222*, 297 F.3d 1146 (2002), the Tenth Circuit affirmed a district court's conclusion that union stewards did not count as union employees where the plaintiff only presented evidence of "isolated reimbursements for lost time," which were "insufficient to establish employment relationships." *Id.* at 1152. *Ferroni* gave no consideration to other indicia of an employment relationship, however, and therefore does not alter this Court's analysis.

[13] The *Spirides* court noted the specific relevance of additional factors, including (1) the kind of occupation, and in particular whether the work is usually done under supervision; (2) the skill required in the particular occupation; (3) whether the employer furnished the equipment used and the place of work; (4) the length of time during which the individual worked; (5) the method of payment; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties. 613 F.3d at 832. The Court notes that many of these factors are not relevant to the Local's relationship with its officers

Considering the principles of traditional agency law, two courts have concluded that members of a union's executive board were not union employees for purposes of Title VII because the board members did not perform "traditional employee duties, such as maintaining records or managing the office." *Kern v. City of Rochester*, 93 F.3d 38, 47 (2d Cir. 1996); *see also Chavero v. Local 241, Div. of Amal. Transit Union*, 787 F.2d 1154, 1157 (7th Cir. 1986). Even assuming that the Local's officers and stewards perform such duties, the record is devoid of evidence that they are compensated by the Local for doing so, and the Court notes that officers and stewards are expressly prohibited from performing such duties on official time. *See* 5 U.S.C. § 7131(b). Furthermore, the evidence indicates that the Local's stewards generally perform representational functions, including "assisting individual Local members and representing their interests in grievances, meetings, and enforcement of their rights under the collective bargaining agreement." Def.'s Stmt. ¶ 48 (citing 5/25/06 Dep. of Russell Varnado at 25:12-21; Local Bylaws at Sec. 23).[14] The Local's officers have additional duties–prescribed by the Local's Constitution and Bylaws–and some of the treasurer's duties appear more along the lines of "traditional employee duties." *See* Local Const., Art. VI; Local Bylaws, Secs. 10-15 (Def.'s Mot. for Summ. J., Ex. 3). For instance, the treasurer is required, *inter alia*, to maintain a bookkeeping system, make financial reports, and keep an up-to-date roll of the members. *See*

───────────────────

and stewards.

[14] Plaintiff notes that the *Daggitt* court described such duties as "acts within the regular business of the union." Pl.'s Opp'n at 10; *Daggitt*, 245 F.3d at 989. As an initial matter, *Daggitt*'s characterization is at odds with *Kern* and *Chavero*. Moreover, in the instant case, such duties are not properly described as "union business" because the official time arrangement specifically distinguishes between representational activities and "activities . . . relating to the internal business of a labor organization." 5 U.S.C. § 7131(b); *see also* Eitches Dep. at 39:3-6.

Local Const., Art. VI, Sec. 5.  However, even if the Local's treasurer were counted as a Local employee along with the individuals on the Local's payroll, the Local would still fall far short of the fifteen employees required for Title VII purposes.

Both *Kern* and *Chavero* also note that the board members in those cases did not report to anyone other than themselves.  *See Kern*, 93 F.3d at 47; *Chavero*, 787 F.2d at 1157.  Again, in *Spirides*, the D.C. Circuit stressed the significance of "the employer's right to control the 'means and manner' of the worker's performance."  613 F.2d at 831.  In this vein, Plaintiff argues that "Mr. Eitches hires and fires stewards," Pl.'s Opp'n at 10, and that the *Daggitt* court found that "control over the termination and hiring of stewards is enough, in these circumstances, to find that the union had a measure of control over the manner and means by which the stewards performed their duties," *see* 245 F.3d at 988-89.  It is true that Mr. Eitches testified that the stewards serve at his discretion, that he is entitled to reallocate the 5.7 FTEs of official time quarterly, and that he names the stewards by notifying HUD management.  Eitches Dep. at 39:7-19.  However, it is not clear from *Daggitt* whether the union president in that case was a union employee.  Here, Plaintiff proffers no evidence that Mr. Eitches is anything other than a HUD employee.  As a result, the fact that he may exercise a degree of control over the "manner and means" by which the Local's stewards perform their duties does not, in and of itself, transform the stewards into Local employees.

In sum, Plaintiff has adduced no evidence whatsoever that the Local's officers and stewards are compensated by the Local, rather than by HUD–a factor which has been described as an "essential condition to the existence of an employer-employee relationship."  *Daggitt*, 245 F.3d at 987.  Even if the Court were to ignore this failing, Plaintiff has not demonstrated that the

"'economic realities' of the work relationship" or the "general principles of the law of agency"

suggest that the Local's officers and stewards are employees of the Local. *See Spirides*, 613 F.2d

at 832-33. As a result, the Court concludes that the Local did not have the requisite fifteen

employees during either 2002 or 2003, and therefore does not meet the statutory definition of an

"employer" under 42 U.S.C. § 2000e(b).

### 2. *The Local And The National Are Not A Single Employer*

In addition to arguing that the Local's officers and stewards should count as Local

"employees," Plaintiff argues that the Local meets the fifteen employee requirement because the

Local and the National's operations are sufficiently interrelated, such that the two should be

considered a "single employer." Pl.'s Opp'n at 14-16. In *Radio & Television Broadcast*

*Technicians Local 1264 v. Broadcast Service of Mobil, Inc.*, 380 U.S. 255 (1965), the Supreme

Court set out four factors to consider when determining whether multiple entities should be

considered as a single employer. Pursuant to the *Radio Technicians* test, a district court is to

analyze: (1) interrelation of operations; (2) common management; (3) centralized control of labor

relations; and (4) common ownership of financial control. *Id.* at 256.[15]

The Court initially notes that courts in other jurisdictions have applied the *Radio*

---

[15] In her Opposition, Plaintiff asserts that the *Radio Technicians* test is not the proper test to apply in this case because the Local possesses "unique attributes," pointing to *EEOC v. St. Francis Xavier*, wherein the D.C. Circuit noted that the *Radio Technicians* test might not be the proper test to apply to religious corporations because they can "possess unique attributes." Pl.'s Opp'n (citing 117 F.3d at 626 n.5). However, Plaintiff does not suggest an alternative test and, in fact, applies the *Radio Technicians* test herself. Furthermore, the Court notes that the Ninth Circuit has specifically applied the *Radio Technicians* test to labor unions in Title VII cases. *See Herman v. United Bhd. of Carpenters and Joiners of Am., Local Union*, 60 F.3d 1375 (9th Cir. 1995); *Childs v. Local 18, Int'l Bhd. of Elec. Workers*, 719 F.2d 1379 (9th Cir. 1983); *see also Maxwell v. Kight*, 974 F.Supp. 899 (E.D.Tex. 1996) (same).

*Technicians* test to labor unions and declined to aggregate local and national or international

unions for purposes of Title VII's fifteen employee requirement.  Specifically, in *Childs*, the

court concluded that a union local should not be aggregated with its parent, the international

union, because "[a]lthough [the local] is chartered by the [international union], it conducts its

own labor relations, hires and fires employees on its own, elects its own officers, conducts its

own collective bargaining, and has a separate treasury."  719 F.2d at 1382.  *See also Maxwell*,

974 F. Supp. at 903-05.  Similarly, in *Herman*, the court rejected an attempt to aggregate a local

and international union despite the fact that the

> International charters the local unions, receives dues from the locals, has the
> power to dissolve the locals and receive their assets, has the power to impose
> trusteeships over locals and control their affairs, and because the constitution
> forbids locals to make rules which conflict with those of the International. . .
> [because these features] are common in union constitutions and do not sufficiently
> evidence the type of inter-relationship between the day-to-day operations of the
> International and the local union required to [aggregate their operations].

60 F.3d at 1383-84.

Defendant offers a very thorough analysis of each of the four *Radio Technicians* factors,

fully supported by record evidence.  In contrast, Plaintiff's treatment of each factor is cursory at

best.  Nevertheless, the Court briefly addresses each of the four *Radio Technicians* factors.

With respect to the first factor–the interrelation of the Local and the National's

operations–Plaintiff asserts that the Local and the National "share many financial operations" and

that "AFGE collects dues from Local 476, pays obligations for Local 476, and disburses funds to

Local 476."  Pl.'s Opp'n at 15 (citing Eitches Dep. at 64-65).  However, as discussed above, the

National collects dues for the Local in a pass-through system designed for administrative

convenience.  Moreover, although Plaintiff focuses on the fact that this action is being defended

by counsel from AFGE's General Counsel's office at "no charge" to the Local, *Id.* (citing 9/14/05

e-mail from E. Eitches (Eitches Decl., Ex. D)), that arrangement clearly arose after Plaintiff's

termination by the Local and therefore cannot demonstrate interrelation of operations at the

relevant point in time.  Moreover, Defendant forcefully demonstrates that the Local and the

National's operations are not interrelated because the Local is governed by its own Constitution,

and because its operations are overseen by President Eitches–who does not report to anyone at

the National–entirely independently of the National.  *See* Def.'s Mot. at 20-23.

    With respect to the second factor–common management–"the existence of interlocking

officers and directors is particularly relevant."  *Tewelde v. Albright*, 89 F. Supp. 2d 12, 18

(D.D.C. 2000).  Here, Plaintiff erroneous asserts that Mr. Eitches is "a regional vice president

and executive board member of AFGE's bargaining council," Pl.'s Opp'n at 15, when, as

discussed above, he in fact holds those positions on HUD Council 222.  *See* Eitches Dep. at

72:21-74:11; *see also* Varnado Decl. ¶ 5 ("Although Eitches is an officer of the HUD bargaining

council, he is not an officer of the National Union, which is a separate and distinct entity.").

Based on the record evidence, it appears that none of the Local's officers are employees or

officers of the National.  Def.'s Stmt. ¶ 79; Eitches Decl. ¶ 15.

    With respect to the third factor–centralized control of labor relations–as discussed above,

Plaintiff provides no record evidence for her assertion that the Local's "labor relations are

controlled by [the National's] constitution," Pl.'s Opp'n at 15, and her assertion is directly

contravened by Mr. Bowman's Declaration.  Bowman Decl. ¶ 12.  Plaintiff's assertion therefore

does not controvert the record evidence that the National does not hire, fire, set wages, working

hours, working conditions, or fringe benefits for Local employees, and did not hire, employ, or

terminate Plaintiff, play any role in her employment, or pay her or provide her with employment benefits.  Def.'s Stmt. ¶¶ 76, 78; Eitches Decl. ¶¶ 13, 19; Bowman Decl. ¶ 12

Finally, with respect to the fourth factor–common ownership or financial control–Plaintiff again points to the system whereby the National collects dues for the Local, and notes that when a local disbands, its property and funds become property of the National.  Pl.'s Opp'n at 16.  The Court has already addressed the former argument and the latter was specifically rejected by the Ninth Circuit in *Herman*.  *See* 60 F.3d at 1383-84.  Furthermore, the record demonstrates that the National has no financial ownership in or control of the Local.  Def.'s Stmt. ¶ 81; Eitches Decl. ¶ 17; Bowman Decl. ¶ 14.  The Local is self-sufficient and meets its budget needs from the collection of dues and other business activities, without financial reliance on the National.  Def.'s Stmt. ¶ 81; Eitches Decl. ¶ 17; Bowman Decl. ¶ 14.

Based on the foregoing, the Court has no basis on which to conclude that the Local and the National are a "single employer" for purposes of Title VII.  Moreover, as discussed above, the Court lacks a basis for determining that the Local's officers and stewards are employees of the Local under 42 U.S.C. § 2000e(f).  As a result, the Court must conclude that, at all relevant times, the Local had less than fifteen employees and was not an "employer" for purposes of Title VII, such that Plaintiff cannot pursue a claim against the Local under Title VII.  *See* 42 U.S.C. § 2000e(b).  The Court shall therefore grant Defendant's Motion for Summary Judgment with respect to Plaintiff's Title VII claims.

**B.      *Plaintiff Has Not Proffered Evidence Sufficient To Demonstrate That The Local Is Liable For Mr. Eitches' Alleged Defamation***

The Court turns now to Plaintiff's claim for defamation under District of Columbia law.

30

Plaintiff argues that Mr. Eitches' e-mail "is clearly defamatory, as it accuses [Plaintiff] of stealing and fraud[, accusations that] are *per se* defamatory," and that "Mr. Eitches published his e-mail by sending it to the entire membership of Local 476."  Pl.'s Opp'n at 18.  Defendant's Motion for Summary Judgment includes a number of arguments relating to the merits of Plaintiff's defamation claim.  In addition, however, Defendant argues that Plaintiff cannot pursue her defamation claim against the Local because the allegedly defamatory e-mail was sent by Mr. Eitches "in his capacity as a candidate for reelection to union office . . . [and] was not sent 'by' the union."  *See* Def.'s Mot. at 40; Def.'s Reply at 20-21.  Defendant's argument is essentially that Plaintiff cannot hold the Local vicariously liable for Mr. Eitches' alleged defamation under a theory of *respondeat superior*.  The Court addresses this argument at the outset because it goes to Plaintiff's very ability to pursue her defamation claim in this action.

As discussed above, Mr. Eitches sent the allegedly defamatory e-mail in response to an e-mail from a Local member specifically opposing his re-election in the upcoming Local election. *See* 9/13/05 E-mail from D. Walker (Eitches Decl., Ex. C); 9/14/05 E-mail from E. Eitches (Eitches Decl., Ex. D); Eitches Decl. ¶ 24.  Defendant correctly asserts that the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.*, and its implementing regulations prohibit labor unions from supporting or opposing any candidate for union office and from using union funds in support of or in opposition to a candidate for union office.  *See* Def.'s Mot. at 40; Def.'s Reply at 21; *see also* 29 U.S.C. § 481; 29 C.F.R. § 452.1.  Specifically, 29 C.F.R. § 452.76 provides that union officers may engage in campaign activities but that, because such activities must not involve the expenditure of union funds, officers "may not campaign on time that is paid for by the union, nor use union funds, facilities, equipment, stationery, etc., to

assist them in such campaigning." 29 C.F.R. § 452.76.

In her Opposition, Plaintiff argues that she may maintain her defamation claim against the Local, rather than against Mr. Eitches individually, because "Mr. Eitches is president of the local and sent the e-mail to all local members using his local e-mail account during work hours, and thus . . . a jury could find that Eitches sent the email as a union official and not as a private person." Pl.'s Opp'n at 18-19. However, Plaintiff's assertion is incorrect as a matter of law and fact. As discussed above, Mr. Eitches could not have sent the e-mail in question from a "Local e-mail account" because no such accounts exist. *See* Varnado Decl. ¶ 6. Furthermore, under the Labor-Management Reporting and Disclosure Act and its implementing regulations, Mr. Eitches could not have sent the allegedly defamatory e-mail on time paid for by the Local or using Local funds, facilities, or equipment because it related to his re-election campaign. Nor could he have sent the e-mail on behalf of the Local, because the Local is prohibited from engaging in campaigning. Significantly, there is no evidence in the record to indicate that the Local ratified or supported Mr. Eitches' e-mail in violation of the pertinent regulations. Instead, it appears that notwithstanding the fact that Mr. Eitches was the Local President at the time that he sent the allegedly defamatory e-mail, he sent it in his capacity as an individual candidate for re-election.

Plaintiff therefore presents the Court with no basis on which to conclude that the Local should be held vicariously liable for Mr. Eitches' alleged defamation. Although the Court previously concluded that Mr. Eitches is not a Local employee for purposes of Title VII, the Court nevertheless notes that under "District of Columbia law, an employer may be held vicariously liable for the intentional torts of his employee only where the employee's tortious act (1) grew out of a foreseeable job-related controversy and (2) was motivated at least in part by a

32

purpose to serve his principal." *Carter v. Washington Metro. Transit Auth.*, 451 F. Supp. 2d 150, 154 n.8 (D.D.C. 2006) (internal quotation omitted).  Even if Mr. Eitches were a Local employee, then, the Local would not be liable for his alleged defamation because his e-mail could not have been motivated by a purpose to serve the Local when the Local could not engage in campaigning.

As a result, the Court concludes that Plaintiff cannot pursue her defamation claim against the Local.  The Court therefore does not reach the merits of Plaintiff's defamation claim, but rather grants Defendant's Motion for Summary Judgment with respect to that claim.

## IV.  CONCLUSION

For the foregoing reasons, the Court shall grant-in-part and deny-in-part Defendant's Motion for Leave to File the Second Christie Declaration.  Specifically, the Court shall admit paragraphs 1-9, 11, 13, 15-16, and18 of the Second Christie Declaration, and shall exclude paragraphs 10, 12, 14, 17, and 19 of the Second Christie Declaration.  In addition, the Court concludes that Plaintiff cannot pursue her Title VII claims against the Local because the Local does not meet the statutory definition of an employer under 42 U.S.C. § 2000e(b), and cannot pursue her defamation claim against the Local on a theory of *respondeat superior*.  The Court shall therefore grant-in-part Defendant's Motion for Summary Judgment, and shall dismiss this action in its entirety.

Date:   September 20, 2007

                                       _____/s/_____
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge