UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROBIN DEAN,

    Plaintiff,

      v.

AMERICAN FEDERATION OF
GOVERNMENT EMPLOYEES,
LOCAL 476

    Defendant.

Civil Action No. 04–1466 (CKK)

**MEMORANDUM OPINION**
(April 27, 2008)

On September 20, 2007, the Court issued a Memorandum Opinion and accompanying Order granting the motion for summary judgment brought by Defendant, American Federation of Government Employees ("AFGE"), Local 476 (hereinafter "Defendant" or "the Local"), and dismissing this case in its entirety. *See Dean v. AFGE, Local 476*, 509 F. Supp. 2d 39 (D.D.C. 2007) ("Mem. Op."). The Court found that Plaintiff, a former employee of the Local, could not pursue claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*, because the Local does not meet Title VII's definition of an "employer" subject to suit. *See id.* at 51-58. The Court further found that Plaintiff could not pursue her defamation claim–based upon an e-mail sent by Plaintiff's supervisor, Edward Eitches, President of the Local–against the Local. *See id.* at 58-69. Plaintiff has now moved the Court to reconsider certain aspects of its September 20, 2007 Memorandum Opinion and Order. Specifically, Plaintiff argues that: (1) the Court erred in concluding that the Local's stewards were not employees of the Local, and should have found that a factual question existed as to whether the Local was a joint employer of the

stewards, along with the United States Department of Housing and Urban Development; and (2) that a jury could conclude that the Local was liable for Mr. Eitches' alleged defamation.

Defendant opposes Plaintiff's Motion for Reconsideration and, for its part, has filed a Motion for Attorney's Fees, asserting that it has been forced to unnecessarily litigate the question of whether the Local is an "employer" pursuant to Title VII. Plaintiff, in turn, opposes Defendant's Motion for Attorney's Fees. Upon searching consideration of the parties' filings, the relevant legal authority, and the entire record herein, the Court shall deny Plaintiff's [35] Motion for Reconsideration, as well as Defendant's [37] Motion for Attorney's Fees. Although Plaintiff's Motion for Reconsideration lacks merit, the Court declines to exercise its discretion by awarding attorney's fees to the Local.

## I. BACKGROUND

The Court assumes familiarity with–and incorporates herein–its September 20, 2007 Memorandum Opinion, which contains an extensive discussion of the factual background of this case and the evidence adduced by the parties on summary judgment. *See generally* Mem. Op. 509 F. Supp. 2d 39. The Court therefore repeats herein only the minimal background necessary for resolution of the motions at issue.

Plaintiff, Robin Dean, worked as a secretary for the Local from September 21, 2002 to June 23, 2003. *Id.* at 43. The Local is an unincorporated association and a local labor organization, which represents only employees of the United States Department of Housing and Urban Development ("HUD"). *Id.* Edward Eitches is a senior trial attorney in the General Counsel's Office at HUD, and has been the President of the Local since 1999. *Id.* Mr. Eitches hired Plaintiff and acted as her supervisor during her tenure with the Local. *Id.* at 43-44.

Plaintiff's Amended Complaint alleged that during her employment with the Local, she "was subjected to unwelcome sexual advances, requests for sexual favors, and other verbal and physical conduct of a sexual nature from" Mr. Eitches, amounting to a hostile work environment, and further alleged that she was wrongfully terminated due to gender discrimination. *Id.* at 41, 44.

The Court's September 20, 2007 Memorandum Opinion concluded that Plaintiff could not pursue her claims under Title VII because that statute only applies to employers who have "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year," 42 U.S.C. § 2000e(b), and the Local did not have fifteen or more employees at all relevant times. *See* Mem. Op., 509 F. Supp. 2d at 52-58. This conclusion was based on two separate findings: first, that the Local's officers and stewards are not employees of the Local; and second, that the Local and the National are not a single employer. *Id.* As Plaintiff's Motion for Reconsideration does not challenge this second conclusion, the Court does not revisit it herein.

With respect to whether the Local's officers and stewards are employees of the Local, the Court first noted that the issue was only relevant because the Local clearly did not meet Title VII's definition of an employer under the "payroll method" test set forth in *Walters v. Metropolitan Educational Enterprises, Inc.*, 519 U.S. 202 (1997). *Id.* at 52-53. Specifically, the record demonstrated that in each relevant year (2002 and 2003), the Local had no more than five people on its payroll in total, and at most two on its payroll at any given time. *Id.* Despite finding that the Local was not an employer for purposes of Title VII under the payroll method, the Court continued to consider Plaintiff's argument that "Local 476's officers and stewards

should be considered the local's 'employees' because they are paid by HUD for doing union work under HUD and Local 476's contract." *Id.* at 53.

As the Court's September 13, 2007 Memorandum Opinion explained, the Local's officers and stewards are "paid by HUD for doing union work" pursuant to an "official time" arrangement authorized by the Federal Service Labor Relations Act and as a result of the collective bargaining agreement between HUD and Local 476. *Id.* at 46-47. "Official time" refers to duty hours paid by HUD during which a HUD employee is authorized to perform representational duties on behalf of union members. *Id.* at 46. The Local is permitted to designate up to twenty stewards, but is limited to a total of 5.7 full-time equivalent positions ("FTEs") of paid official time for stewards and/or officers. *Id.* at 47. As a result, the Local's stewards may be assigned to perform as little as 5% of their work week on union representation; in 2003, fourteen stewards were assigned to spend 10% of their work week on union representation, and four were assigned to spend 25% of their work week on union representation. *Id.* Further, pursuant to 5 U.S.C. § 7131(b), Local stewards and officers are expressly prohibited from performing "[a]ny activities . . . relating to the internal business of a labor organization" while on official time, but rather are restricted to doing representational work while on official time. *Id.*

The Court's September 13, 2007 Memorandum Opinion rejected Plaintiff's suggestion that the official time arrangement provided for in the collective bargaining agreement between HUD and the Local is unusual. *Id.* at 48. To the contrary, the Court noted that "[o]fficial time arrangements are specifically provided for by federal law, have been approved by the Federal Labor Relations Authority, and are used in virtually all of AFGE's over 1000 local bargaining

4

units." *Id.* at 48, 53.  The Court's September 13, 2007 Memorandum Opinion also rejected Plaintiff's unsupported assertion that the Local's officers and stewards would not receive their full salary from HUD if they did not work their allotted official time. *Id.* at 54.  Instead, the Court noted the explanation of the Local's First Vice President that if the Local's officers and stewards did not work their allotted union hours, they "would return to the duties of their regular federal employment with HUD.  They would lose no pay, status or other benefits whatsoever." *Id.* (quoting Dep. of Russell Varnado).

The Court's conclusion that the Local's officers and stewards are not employees of the Local was premised primarily on the fact that they are only compensated by HUD, and not by the Local. *Id.* at 53-54.  The Court noted that the sole reported case concluding that union stewards were union employees for purposes of Title VII based its finding on the fact that the stewards received three forms of compensation from the union, and stated that

> "Central to the meaning of [the words employer and employee in the context of Title VII] is the idea of compensation in exchange for services: an employer is someone who pays, directly or indirectly, wages or a salary or other compensation to the person who provides services–that person being the employee."  Compensation is an "essential condition to the existence of an employer-employee relationship."  Without compensation, no combination of other factors will suffice to establish the relationship.

*Id.* at 54 (quoting *Daggitt v. United Food & Commercial Workers Union*, 245 F.3d 981, 987 (8th Cir. 2001) (quoting *Graves v. Women's Prof'l Rodeo Ass'n*, 907 F.2d 71, 73 (8th Cir. 1990)). The Court nevertheless continued to address–and ultimately rejected–Plaintiff's claim that other "indicia of an employment relationship" indicated that the officers and stewards were Local employees.  Mem. Op. at 54-56.  In so doing, the Court applied the factors that courts in other jurisdictions have considered in determining whether a labor union's executive board members

are union employees for purposes of Title VII, and which the D.C. Circuit has considered in determining whether a worker is an employee or an independent contractor. Mem. Op., 509 F. Supp. 2d at 54-55 (citing *Spirides v. Reinhardt*, 613 F.2d 826, 831 (D.C. Cir. 1979)). Plaintiff's Motion for Reconsideration is based in part upon the Court's consideration of the *Spirides* factors.

Plaintiff's Amended Complaint also included a claim for defamation under District of Columbia Law against the Local, based upon an e-mail that Mr. Eitches sent to the Local's Secretary and copied to the entire Local membership. Mem. Op., 509 F. Supp. 2d at 44. The Local moved for summary judgment on Plaintiff's defamation claim arguing, *inter alia*, that the allegedly defamatory e-mail was sent by Mr. Eitches "in his capacity as a candidate for reelection to union office . . . [and] was not sent 'by' the union," and that as a result, Plaintiff could not hold the Local vicariously liable for Mr. Eitches' alleged defamation under a theory of *respondeat superior*. *Id.* at 58. The Court's September 13, 2007 Memorandum Opinion accepted the Local's argument in this respect, and therefore granted Defendant's Motion for Summary Judgment on Plaintiff's defamation claim. In so doing, the Court specifically rejected Plaintiff's assertion that Mr. Eitches sent his allegedly defamatory e-mail from a "Local e-mail account," finding that no such accounts exist, and noted that Plaintiff had proffered no evidence on which to conclude that Mr. Eitches sent his allegedly defamatory e-mail on behalf of the Local. *Id.* at 44-45, 59.

The Court also noted that the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401, *et seq.*, and its implementing regulations prohibit labor unions from supporting or opposing any candidate for union office and from using union funds in support of or in

opposition to a candidate for union office, and further noted that, while union officers may engage in campaign activities, they "may not campaign on time that is paid for by the union, nor use union funds, facilities, equipment, stationery, etc., to assist them in such campaigning." *Id.* at 58-59 (citing 29 U.S.C. § 481; 29 C.F.R. § 452.1; *id.* at § 452.76). In light of these regulations, the Court found that Mr. Eitches could not have sent the allegedly defamatory e-mail on time paid for by the Local or using Local funds, facilities, or equipment because it related to his re-election campaign, and could not have sent the e-mail on behalf of the Local, because the Local is prohibited from engaging in campaigning. *Id.* at 59. As a result, the Court concluded that the Local could not be held vicariously liable, as a matter of law, for Mr. Eitches' allegedly defamatory e-mail.

Plaintiff filed her Motion for Reconsideration on October 1, 2007, Defendant filed its Opposition to Plaintiff's Motion for Reconsideration on October 10, 2007, and Plaintiff filed her Reply on October 15, 2007.

## II.  LEGAL STANDARD

Plaintiff's Motion for Reconsideration does not specify the posture in which it is brought; however, generally speaking, a motion for reconsideration is treated as a "[Federal Rule of Civil Procedure] 59(e) motion if filed within 10 days of entry of the challenged order and as a Rule 60(b) motion if filed thereafter." *United States v. Pollard*, 290 F. Supp. 2d 153, 156 (D.D.C. 2003) (quoting *United States v. Clark*, 984 F.2d 31, 32 (2d Cir. 1993)). As Plaintiff's Motion was filed within 10 days of the Court's September 20, 2007 Memorandum Opinion and Order–as

counted under Rule 6 of the Federal Rules of Civil Procedure[1]–the Court treats it as a Rule 59(e) motion. A motion for reconsideration under Rule 59(e) "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation marks and citations omitted); *see also Ramseur v. Barreto*, 213 F.R.D. 79, 81 (D.D.C. 2003) (reconsideration will be granted when the moving party demonstrates that there exists a "manifest error of law or fact," or presents "newly discovered evidence") (quoting *United States v. W. Elec. Co.*, 690 F. Supp. 22, 25 (D.D.C. 1988), *aff'd in part, rev'd on other grounds*, 900 F.2d 283 (D.C. Cir. 1990)).

Granting reconsideration under Rule 59(e) is an "extraordinary measure." *Firestone*, 76 F.3d at 1208. A Rule 59(e) motion is "not simply an opportunity to reargue facts and theories upon which the court has already ruled." *United States v. Funds from Prudential Sec.,* 245 F. Supp. 2d 41, 44 (D.D.C. 2003) (quoting *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995)). Nor is it "a vehicle for presenting theories or arguments that could have been presented earlier," *id.* at 38, or a method of introducing evidence that was "available but not offered at the original motion or trial," *Natural Res. Def. Council, Inc. v. United States Envt'l Protection Agency*, 705 F. Supp. 698, 702 (D.D.C. 1989), *vacated on other grounds*, 707 F. Supp. 3 (D.D.C. 1989); *see also Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1508-09 (5th Cir. 1989) (finding no abuse of discretion in denying a Rule 59(e) motion that sought to raise new theories

---

[1] Rule 6(a) instructs that in computing a time period specified in the Federal Rules of Civil Procedure, "intermediate Saturdays, Sundays, and legal holidays [are excluded] when the period is less than 11 days." Fed. R. Civ. P. 6(a)(2). Plaintiff's motion was filed on October 1, 2007, which was less than 10 days after the Court's September 20, 2007 Memorandum Opinion and Order, excluding the intervening weekend.

where facts were known to the movant in advance of summary judgment).

### III.  DISCUSSION

Plaintiff's Motion for Reconsideration includes two principal arguments: (1) that the Court erred in considering the *Spirides* factors in determining whether the Local's stewards are employees for purposes of Title VII, and should instead have applied "the joint employer test" set forth in *NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982); and (2) that, with respect to Plaintiff's defamation claim, a jury could find that Mr. Eitches violated the relevant statutes and regulations and "so hold the [L]ocal liable for the emails." The Court considers each of Plaintiff's arguments, in turn, ultimately rejecting both.

>   A.   *Applying the Joint Employer Test Does Not Alter the Court's Previous Conclusion that The Local is Not an Employer Pursuant to Title VII*

The Court turns, first, to Plaintiff's argument that the Court should have considered whether the Local and HUD are joint employers of the Local's stewards, under the test set forth in *Browning-Ferris*. Plaintiff's argument is based upon Judge Rosemary M. Collyer's application of that test in *Coles v. Harvey*, 471 F. Supp. 2d 46 (D.D.C. 2007). The *Coles* opinion (which, although persuasive, is not binding on this Court) issued on January 11, 2007–nine months before the Court's September 20, 2007 Memorandum Opinion and Order. As such, in the event Plaintiff believed *Coles* was relevant to Defendant's Motion for Summary Judgment, she might have–and should have–brought the case to the Court's attention long before the Court ruled upon that motion, by filing a notice of supplemental authority during the nine months between Judge Collyer's decision in *Coles* and this Court's September 20, 2007 Memorandum Opinion. Instead, Plaintiff opted to wait until after the Court's ruling and file a motion for

reconsideration. Plaintiff's chosen course of action is certainly an inefficient one, as it requires a second round of briefing and a second expenditure of judicial resources.

In addition, although Plaintiff now argues that the Court should have assessed whether the Local and HUD are joint employers of the Local's stewards, it should be noted that Plaintiff never argued as much in opposition to Defendant's Motion for Summary Judgment. Instead, Plaintiff argued two alternative theories: first, that the Local's stewards should be considered employees of the Local because they "are paid by HUD for doing union work under HUD and Local 476's contract," Pl.'s Opp'n at 13; and second, that the operations of the Local and the National are sufficiently interrelated to constitute a single employer for purposes of Title VII, *id.* at 14. The Court therefore had no reason to consider *Coles* of its own accord, because Plaintiff's arguments did not remotely suggest its applicability to the instant case.

Moreover, a review of *Coles* and the cases it relies upon suggests that the joint employer test Plaintiff argues for is not suited to the facts of the instant case. As the Court's September 20, 2007 Memorandum Opinion noted, in *Walters*, the Supreme Court explained that the usual test for whether an individual is an employee for purposes of Title VII is whether the individual has an employment relationship with the purported employer, and that an employment relationship, in turn, is "most readily demonstrated by the individual's appearance on the employer's payroll." 519 U.S. at 206. The Supreme Court also noted that "the ultimate touchstone under [Title VII] is whether an employer has employment relationships with 15 or more individuals," which may be demonstrated by resort to "traditional principals of agency law." *Id.* at 211. In so doing, the Supreme Court cited to *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318, 323-24 (1992), which in turn describes "determining whether a hired party is an employee under the

general common law of agency," by relying on factors that are quite similar to those described in *Spirides*. *Walters*, 519 U.S. at 206; *Darden*, 503 U.S. at 323-24.

Further, *Coles* and the cases on which it relies involve situations where one employer "contract[s] in good faith with an otherwise independent contractor" for services but "retain[s] for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Browning-Ferris*, 691 F.2d at 1123; *see also Coles*, 471 F. Supp. 2d at 50. Thus, in *Coles*, the plaintiff worked for a temporary employment agency but was assigned to work at Walter Reed Army Medical Center, and argued that she was an joint employee of the temporary employment agency and the Department of the Army for purposes of Title VII. *See generally* 471 F. Supp. 2d 46. Similarly, in *Redd v. Summers*, 232 F.3d 933 (D.C. Cir. 2000), the D.C. Circuit case upon which Judge Collyer relied in concluding that the joint employer test applied in *Coles*, the plaintiff worked for a company retained by the United States Treasury Department's Bureau of Engraving and Printing to provide tour services at the Bureau. *See generally id.* In those cases, the plaintiffs worked full-time at the physical location of one company, but were hired, fired, and supervised by an independent contractor, and the independent contractor, in turn, was compensated for the plaintiffs' services by the company. Here, in contrast, the Local's stewards do not work full-time for the Local, but rather are assigned to spend between 5% and 25% of their work week on representational activities on behalf of the Local. Even more significantly, while the Local's stewards are compensated for the time they spend on representational activities, as the Court's September 20, 2007 Memorandum Opinion stressed, their compensation comes solely from HUD. Thus, unlike the independent contractor situation at issue in *Coles* and *Redd*, the Local–the purported joint employer–is not the indirect

source of the compensation the stewards receive for their union work.

Even if the Court were to apply the joint employer test, however, it would not alter this Court's conclusion that the stewards are not employees of the Local. The joint employer test is simply whether "one employer, while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer." *Redd*, 232 F.3d at 938 (quoting *Browning-Ferris*, 691 F.2d at 1123). *Browning-Ferris* describes this test as "essentially a factual issue," 691 F.2d at 1123 (quoting *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964)), and as a result, in *Coles*, Judge Collyer found that she could not determine the joint employer issue on the factual record before her at the motion to dismiss stage, *see* 471 F. Supp. 2d at 51. In contrast, discovery has already been conducted in this case, and Plaintiff has had the opportunity to proffer all relevant evidence regarding the stewards' relationship to the Local, in connection with Defendant's Motion for Summary Judgment. The question, then, is whether the record demonstrates a genuine issue of material fact regarding the Local's control of the terms and conditions of the stewards' employment. Significantly, this test is not terribly distinct from the primary consideration in the *Spirides* test–"the extent of the employer's right to control the 'means and manner' of the worker's performance"–which the Court addressed in its September 20, 2007 Memorandum Opinion. *Spirides*, 613 F.2d at 831; *see also* Mem. Op., 509 F. Supp. 2d at 55-56.

Plaintiff's Motion for Reconsideration stresses that "Mr. Eitches could hire and fire stewards," and purportedly controls the work that the Local's stewards perform on behalf of the union. *See* Pl.'s Mot. at 6-8. The Court explicitly considered this argument, though, in its

September 20, 2007 Memorandum Opinion, and found it unpersuasive because Mr. Eitches is himself a HUD, as opposed to a union, employee. *See* Mem. Op. at 509 F. Supp. 2d at 56. The Court recognized that in *Daggitt*, the Eighth Circuit found a union president's control over the termination and hiring of union stewards sufficient to demonstrate that the union had a measure of control over the manner and means by which the stewards performed their union duties. *Id.* (citing *Daggitt*, 245 F.3d at 988-89). The Court noted, however, that the Eighth Circuit's opinion did not reveal whether the union president was a union employee. *Id.* A review of the district court opinion affirmed by the Eighth Circuit in *Daggitt* provides the answer: the union president in that case received a "regular, weekly paycheck" from the union. *See Daggitt v. United Food and Comm. Workers Int'l Union Local 304A*, 59 F. Supp. 2d 980, 981-82 (D.S.D. 1999). Here, in contrast, Mr. Eitches' salary is paid by HUD. *See* Mem. Op., 509 F. Supp. 2d at 46. As such, his alleged control over the stewards' work on behalf of the Local does not, in and of itself, demonstrate that the stewards are Local employees.

      Ultimately, the crucial factor here is that the stewards' salaries are entirely paid for by HUD, regardless of the amount of official time that they devote to union representational work. "HUD issues their paychecks, which are funded from its agency budget, withholds all deductions, and issues their annual W-2 forms." *Id.* at 47. Plaintiff offers no reason whatsoever for ignoring the Eighth Circuit's reminder in *Daggitt* that "[c]ompensation is an 'essential condition to the existence of an employer-employee relationship [for purposes of Title VII].' Without compensation, no combination of other factors will suffice to establish the relationship." 245 F.3d at 987 (quoting *Graves*, 907 F.2d at 73). Plaintiff asserts that "[w]hether an employee is paid directly or indirectly is not dispositive of this issue," Pl.'s Opp'n at 7 n.5, but Plaintiff's

argument entirely misses the point: the Local does not pay its stewards either directly or indirectly for their union work, rather HUD pays the entirety of the stewards' salaries and provides the stewards with all of their benefits. *See* Mem. Op., 509 F. Supp. 2d at 49-50. Further, as the Court's September 20, 2007 Memorandum Opinion explained, the salaries and benefits the stewards receive from HUD are entirely unaffected by the amount of union work they do. *Id.* at 48. "[I]f the stewards did not work their allotted union hours, or were removed from their positions as stewards . . . they would return to the duties of their regular federal employment with HUD [and] would lose no pay, status or other benefits whatsoever." *Id.* (quoting Dep. of Local First Vice Pres., Russell Varnado). Thus, even if Plaintiff is correct that Mr. Eitches controls the terms and conditions of the stewards' union work, he controls only the 5% to 25% of their work time that the stewards devote to union work,[2] and his control has no effect on the stewards' ultimate compensation.

As such, Plaintiff's argument does not demonstrate that the Local "retain[s] for itself sufficient control of the terms and conditions of [the stewards'] *employment*," *Redd*, 232 F.3d at 938 (emphasis added), and Plaintiff's request that this Court apply the joint employer test described in *Coles* is therefore unavailing. Plaintiff's Motion for Reconsideration presents no reason for revisiting the remainder of the conclusions contained in the Court's September 20, 2007 Memorandum Opinion. Thus, the Court shall deny Plaintiff's Motion for Reconsideration insofar as it challenges the Court's conclusions that the Local's stewards are not employees of

---

[2] In this respect, Mr. Eitches' alleged control over the stewards' work is quite different from the types of control considered in cases like *Coles* and *Browning-Ferris*, where the employees work full-time on behalf of one company but are hired, fired, and paid by an independent contractor.

the Local for purposes of Title VII, that the Local therefore does not meet that statute's definition of an employer, and that Plaintiff cannot pursue her Title VII claims against the Local as a result.

> B. *Plaintiff's Argument Regarding Her Defamation Claim Ignores the Court's September 20, 2007 Memorandum Opinion*

Plaintiff's second argument for reconsideration merits almost no attention. Plaintiff takes issue with the Court's conclusion that the Local cannot be held vicariously liable for Mr. Eitches' alleged defamation because he sent the allegedly defamatory e-mail from a HUD account and, by law, was precluded from using union funds, union equipment, or official time to send an e-mail relating to his campaign for re-election as President of the Local. Pl.'s Mot. at 10-11. According to Plaintiff, "Mr. Eitches could have sent the email on time paid for by the Local or using Local funds, facilities or equipment if he broke the law," and a "jury should be allowed to determine whether or not Mr. Eitches broke the law." *Id.* at 11. Plaintiff's argument ignores the Court's explicit explanation of why the Local cannot be held vicariously liable for Mr. Eitches' alleged defamation: under "District of Columbia law, an employer may be held vicariously liable for the intentional torts of his employee only where the employee's tortious act (1) grew out of a foreseeable job-related controversy and (2) was motivated at least in part by a purpose to serve his principal." Mem. Op., 509 F. Supp. 2d at 59 (quoting *Carter v. Washington Metro. Transit Auth.*, 451 F. Supp. 2d 150, 154 n.8 (D.D.C. 2006)). Putting aside the Court's previous conclusion that Mr. Eitches is not an employee if the Local, if Mr. Eitches broke the law by using union funds or union time to send his campaign-related e-mail, he simply could not have been "motivated at least in part by a purpose to serve" the Local because the Local may not engage in campaigning under the relevant law and regulations. As a matter of District of Columbia law,

then, the Local may not be held vicariously liable for Mr. Eitches' allegedly defamatory e-mail, and there is no factual issue remaining for a jury to consider.

The Court's September 20, 2007 Memorandum Opinion reached this exact conclusion. Mem. Op., 509 F. Supp. 2d at 59. Accordingly, the Court shall deny Plaintiff's Motion for Reconsideration with respect to her defamation claim.

   C.   *The Court Shall Deny Defendant's Motion for Attorney's Fees*

In addition to opposing Plaintiff's Motion for Reconsideration, Defendant has also filed a Motion for Attorney's Fees, arguing that the Local has been forced to unnecessarily litigate the issue of whether it meets the statutory definition of an employer for over three years. *See* Def.'s Opp'n at 4-6. Section 706(k) of Title VII states that the "court, in its discretion may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 2000e-5(k). In construing that section, the Supreme Court has explained that, while prevailing plaintiffs in civil rights cases (who play the role of private attorney general) must be awarded attorney's fees unless special circumstances render such an award unjust, the presumption is reversed where the prevailing party is a Title VII defendant. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 416-21 (1978); *see also Mbulu v. Bureau of Nat. Affairs, Inc.*, 448 F. Supp. 2d 122, 125 (D.D.C. 2006). Prevailing Title VII defendants may only be awarded attorney's fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation . . . ." *Christiansburg Garment Co.*, 434 U.S. at 421.

That standard is not met in the instant case. Significantly, Defendant overstates the degree to which it has been forced to "litigate unnecessarily." The Local stresses that it fully briefed the issue of Title VII's statutory requirement of 15 employees in connection with its

October 2004 Motion to Dismiss, and asserts that its cause "has only solidified with every passing discovery period and briefing on the underlying statutory requirements." Def.'s Opp'n at 4-5. However, as Plaintiff correctly points out, the Court denied Defendant's Motion to Dismiss insofar as it was based on Title VII's fifteen-employee requirement, finding that it lacked the record necessary to determine whether the Local had fifteen employees at the relevant points in time. *See Dean v. AFGE*, Civil Action No. 04-1466, Mem. Op. (D.D.C. Aug. 29, 2005). As such, Plaintiff was justified in pursuing discovery in this action and opposing Defendant's Motion for Summary Judgment. The Court agrees with the Local that Plaintiff's arguments for reconsideration of the Court's grant of summary judgment are meritless and, with respect to Plaintiff's defamation claim, perhaps frivolous. Nevertheless, Plaintiff's arguments do not appear to have been made in bad faith, and the Court concludes that Plaintiff's meritless motion for reconsideration does not demonstrate that this "action was frivolous, unreasonable, or without foundation." In short, the Court declines to exercise its discretion by awarding the Local attorney's fees, and shall deny the Local's Motion for Attorney's Fees.

## IV. CONCLUSION

For the foregoing reasons, the Court shall DENY Plaintiff's [35] Motion for Reconsideration and shall DENY Defendant's [37] Motion for Attorney's Fees. An appropriate Order accompanies this Memorandum Opinion.

Date:   April 27, 2008

                                         /s/
                                         COLLEEN KOLLAR-KOTELLY
                                         United States District Judge